IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 11, 2017 Session

**JOLETTA SUMMERS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 11-01531     Carolyn W. Blackett, Judge

_____

**No. W2016-02157-CCA-R3-PC**

_____

Petitioner, Joletta Summers, appeals the denial of her petition for post-conviction relief from her convictions for voluntary manslaughter, attempted voluntary manslaughter, and employment of a firearm during the commission of a dangerous felony. On appeal, Petitioner asserts that she received ineffective assistance of counsel because trial counsel mentioned during opening statement an inculpatory statement that was never introduced into evidence; failed to adequately argue for severance of her case from her codefendant's; failed to object to the State's improper closing argument; failed to file a timely motion for new trial; and failed to argue on appeal that the trial court erred in failing to specify the predicate felony in the jury instructions for the employment of a firearm charge. Upon our review of the record and applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Joletta Summers.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

Petitioner and her husband, Antonio Jackson, were indicted for second degree murder, attempted second degree murder, and employing a firearm during the commission of a dangerous felony. *See State v. Antonio Jackson and Joletta Summers*, No. W2013-00185-CCA-R3-CD, 2014 WL 6200805, at *1 (Tenn. Crim. App. Nov. 10, 2014), *perm. app. denied* (Tenn. Feb. 13, 2015). The facts at trial established that Petitioner's and Jackson's teenaged son, "Little Tony," got into a fight with another boy while playing basketball. Petitioner and Jackson drove to where the group of teenagers had been playing basketball in order to confront them, though the boy who had started the fight had already left. A fist fight erupted between Jackson and the victims, Nico White and Marion Withers. At some point, Petitioner went to the passenger side of her vehicle and then returned to Jackson's side. Gunshots were fired from the vicinity of Petitioner and Jackson, killing Mr. Withers and severely wounding Mr. White. One witness testified that Jackson fired the shots, while others could not identify who had the gun. Low levels of gunshot residue were detected on Jackson's hands but not on Petitioner's. Jackson testified, claiming that the victims attacked him first and denying that he had a gun or that he shot anyone. Jackson initially told police that Petitioner was responsible for the shooting "because it appeared that she had a gun" when they returned home; however, at trial, he denied that he saw Petitioner with a gun at the scene and stated that he did not know who fired the shots. Petitioner did not testify. *Id*. at *1-4.

The jury convicted Petitioner as charged of employing a firearm during the commission of a dangerous felony and of the lesser-included offenses of voluntary manslaughter and attempted voluntary manslaughter.[1] Petitioner was sentenced as a Range I, standard offender to concurrent terms of three years for each of the manslaughter convictions and a consecutive term of six years for the firearm conviction, for a total effective sentence of nine years. *Id*. On appeal, Petitioner challenged the sufficiency of the evidence as to the manslaughter convictions and argued that the trial court erred in denying the motion to sever the defendants and in not admitting into evidence photographs showing the victims' gang affiliation and propensity for violence.[2] *Id*. at *5-8. This Court affirmed the convictions, and the Tennessee Supreme Court denied permission to appeal. *Id*. at *1.

---

[1] Jackson was also convicted of voluntary manslaughter and attempted voluntary manslaughter, but he was acquitted of employing a firearm during the commission of a dangerous felony. *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at *1.

[2] Trial counsel also argued in the appellate brief, which was entered into evidence during the post-conviction hearing, that the conviction for employing a firearm during a dangerous felony should be reversed because the lesser-included offense of reckless endangerment included the use of a deadly weapon as an essential element. *See* T.C.A. § 39-17-1324(c). This argument was not addressed in this Court's opinion on direct appeal.

On August 7, 2015, Petitioner timely filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed on April 12, 2016. Supplements to the amended petition were filed on June 20 and July 20, 2016. The amended petition alleged, in addition to other grounds of ineffective assistance of counsel, that Petitioner was entitled to a delayed appeal because trial counsel had filed an untimely motion for new trial. The amended petition also alleged that the indictment for employing a firearm during the commission of a dangerous felony was void for failing to name the underlying felony. An evidentiary hearing was held on July 21, 2016. We summarize below the testimony pertinent to the issues raised on appeal.[3]

Trial counsel testified that he had been licensed to practice law since 1984, that he mostly practiced criminal law, and that he had conducted over a hundred jury trials. Trial counsel was retained to represent Petitioner sometime in 2010. Trial counsel reviewed all of the discovery materials with Petitioner. Trial counsel testified that he and Petitioner met "quite a bit" because "this case was set for trial several, several times and it kept getting continued, because [Petitioner] had a sick daughter." Trial counsel testified that he "discussed everything" with Petitioner and that she "seemed fairly satisfied" and "confident" with the chosen trial strategy.

The judgment forms and a minute entry were entered into evidence, indicating that the judgments were filed on November 16, 2012. A copy of trial counsel's motion for new trial, which was filed on December 18, 2012, was also entered into evidence. Trial counsel agreed that the motion for new trial should have been filed by Monday, December 17, 2012, and that it was one day late. The trial court held a hearing on the motion for new trial where trial counsel submitted the matter on his motion and did not present any argument.

Post-conviction counsel asked trial counsel about the second issue in the motion for new trial, which reads as follows:

> Defendant states that the Court should have dismissed the charge of Possessing a Firearm During the Commission of or Attempt to Commit a Dangerous Offense in that the jury charge lacked specificity and did not conform to the Defendant's acts and/or actions as set out in the indictment or described by the State's witnesses.

---

[3] Issues raised in the trial court but not raised on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

Admitting that the reference to possessing a firearm was a typographical error, trial counsel explained that he was trying to argue that the indictment for employing a firearm

> didn't connect . . . to any particular crime. That if you're going to charge the jury, then you should charge them. The particular crime in in this case it came back voluntary manslaughter and criminal attempt voluntary manslaughter, so which one was it attaching to, I think is what I was saying.

Trial counsel explained that he usually does not cite case law in his motions for new trial. The second issue in the appellate brief, which was entered into evidence, was "[w]hether the Court committed reversible error in its charge to the jury on the first Count of the indictment by reference to the terms 'deadly weapon' and 'firearm.'" Trial counsel believed that he was attempting to argue the same issue as in the motion for new trial in that the indictment "didn't say with any specificity which one [of the other offenses the State is] attaching this crime to." Trial counsel cited one case in his appellate brief, *State v. Jeremiah Dawson*, No. W2010-02621-CCA-R3-CD, 2012 WL 1572214, at *8 (Tenn. Crim. App. May 2, 2012) (reversing convictions for carjacking and employing a firearm during the commission of a dangerous felony when the jury was instructed on both carjacking by force or intimidation and carjacking with a deadly weapon), *perm. app. denied* (Tenn. Sept. 20, 2012). Trial counsel could not recall if he kept up with appellate decisions addressing the underlying felony issue between the time he filed his appellate brief and the time this case was decided by the Court of Criminal Appeals.

Trial counsel acknowledged that he had received a copy of codefendant Jackson's statement in discovery. In the statement, Jackson initially identified Petitioner as the person responsible for the death of Mr. Withers and stated that he saw her with a gun after they left the scene of the shooting. Trial counsel testified that he joined in the motion to sever filed by Jackson's attorney. Trial counsel admitted that he did not file his own written motion for severance. Trial counsel remembered that the motion was argued and denied, but he did not remember if it was argued before the trial or at some point during the trial. Trial counsel did not remember specifically what argument he made to the trial court, but he believed that he would have argued that Jackson's "statement made it almost impossible for my client to get a fair trial." Trial counsel agreed that Jackson's attorney would have been arguing different grounds for severance, but he explained that they were both arguing for a fair trial. Trial counsel did not remember the trial court's specific ruling, but he knew that the motion was denied.

Post-conviction counsel then referred to the portion of the trial transcript where Jackson was being cross-examined by the State. After Jackson stated that he told the police that Petitioner was responsible for the death of Mr. Withers, trial counsel objected and requested a bench conference. According to the transcript, trial counsel's argument

at the bench was "indiscernible." Trial counsel did not recall specifically what he said at that point but stated, "I must have said something about *Bruton*, I don't know, because right after that, [the State] says something about that."[4] Trial counsel agreed that he was not making a motion for severance at that point in the trial. Trial counsel explained that he would not have been asking for a severance at that point because the trial court had already ruled on the issue. Trial counsel agreed that a transcript of the argument on the severance issue should have been included in the record on direct appeal.

As part of the discovery in this case, trial counsel received a copy of Petitioner's statement to police in which she admitted to pulling a gun at the scene and that it accidentally fired when someone bumped her hand. Trial counsel did not know if the State would use the statement at trial, but he "suspected they may." Trial counsel explained that he mentioned the statement during his opening statement in an attempt to "take the sting out" of it. Trial counsel presented a self-defense theory in his opening statement based, in part, on this statement. However, the State did not introduce the Petitioner's statement during the trial, and none of the witnesses testified that Petitioner had a gun in her hand at the scene. In his closing argument, trial counsel argued lack of evidence that Petitioner possessed the weapon rather than self-defense. Trial counsel explained that based on the evidence presented at trial, "self[-]defense seemed a little bit off to me . . . it just didn't feel right in my closing." Trial counsel explained that he had discussed the different approaches with Petitioner. Trial counsel did not know if the jury would remember what he had said during opening statement but considered that they may look upon the change in theory "unfavorably."

Post-conviction counsel showed trial counsel excerpts from the prosecution's closing argument, including one where he referred to Petitioner's son wearing a Polo shirt at trial as a "smoke screen." Trial counsel explained that he did not object to that language because "everyone uses it, basically." Trial counsel further explained:

> I don't object to everything that comes in. Some things I think [are] a waste and think jur[ors] tend to, it turns jurors off when you make an objection on every little point. I mean, they really take that as you're hiding something. And some things, if it doesn't hurt me, I don't care.

With regard to the prosecutor's reference to a police officer as a "good officer," trial counsel reiterated that "if it doesn't hurt me, I think you bring more attention sometime[s] with your objection than you would if you just let it go. Because, the jury, I mean, if you bring attention to it they are going to pay attention to it." Trial counsel also did not

---

[4] *See Bruton v. United States*, 391 U.S. 123, 135-37 (1968) (holding that the admission in a joint trial of a non-testifying codefendant's statement implicating the defendant violated the defendant's right to cross-examination guaranteed by the Confrontation Clause). Specifically, the prosecutor says "This is not *Bruton*."

object during jury selection to the judge's comment that the jury "can't believe everything [codefendant Jackson's counsel] says." Trial counsel did not believe the statement was objectionable and did not believe that he could object to the judge's statements.

On cross-examination, trial counsel testified that he believed it was in Petitioner's best interests to have her case severed from her codefendant but that the decision was ultimately up to the judge. He remembered seeking severance, the State objecting, and the judge denying the motion for severance. As to his opening statement, trial counsel did not believe that he would have presented his argument any differently. Trial counsel agreed that if self-defense was fairly raised by the proof, then the burden would be on the State to overcome it, so it would be advantageous to raise a self-defense theory. Trial counsel agreed that he could not introduce Petitioner's statement because it would have been hearsay, but the State could have introduced it as a statement against interest.

Greg Gilbert, the prosecutor who tried Petitioner's original trial, testified that he remembered Jackson's counsel "being the prime mover in an argument for severance" and trial counsel "joining in to that argument." Mr. Gilbert believed that the severance issue was argued pretrial but could not remember exactly when it was argued. Mr. Gilbert testified that he did not remember trial counsel making an argument. Mr. Gilbert did not believe that there was a lot of argument because "under the mandatory joinder rules it is pretty clear that this arises out of the same facts and circumstances." Mr. Gilbert believed the severance motion was "a formality, more than anything." Mr. Gilbert agreed that trial counsel's "indiscernible" objection during the cross-examination of Jackson was in relation to a potential *Bruton* issue. Mr. Gilbert believed that trial counsel "may have mentioned, [']this is why we wanted a severance.[']" On cross-examination, Mr. Gilbert agreed that the *Bruton* objection was misplaced because he was not introducing an out-of-court statement of a non-testifying codefendant.

Petitioner testified that after an initial meeting with trial counsel to discuss the basic facts of the case, Petitioner only briefly met with trial counsel approximately three times. Trial counsel reviewed the discovery with Petitioner. Petitioner testified that approximately two or three months before trial, she and trial counsel discussed a trial strategy based on the lack of evidence. Petitioner testified that trial counsel never mentioned a self-defense strategy until it was mentioned by Jackson's attorney at trial. Petitioner admitted that she did have a gun in her possession that night but claimed that she did not fire it because her husband was in the middle of the altercation. Petitioner wanted trial counsel to present an expert witness to explain the lack of gunshot residue on her hand to counteract the suggestion that she had simply washed her hands. Petitioner did not remember trial counsel arguing for severance from her codefendant.

On cross-examination, Petitioner admitted that she did not see anyone else with a gun that evening. Petitioner told the police that if her gun fired, it would have been when her hand was hit. Petitioner claimed that she dropped the gun on the street and denied that she had a gun in her possession when she and Jackson returned home. Petitioner explained that when Jackson told police that she "appeared" to have a gun, he must have been referring to her purse.

The post-conviction court entered a written order denying relief on October 6, 2016. The post-conviction court determined that Petitioner was not prejudiced by the untimely filing of the motion for new trial because it "was reviewed by the court, and was denied." Additionally, the post-conviction court found that Petitioner was not prejudiced by counsel's failure to file a separate motion for severance because he joined in the motion filed by codefendant Jackson's counsel and the motion was denied. The post-conviction court found that trial counsel made a reasonable tactical decision when he mentioned Petitioner's statement to police in his opening statement and then changed theories when the statement was not introduced into evidence. As to trial counsel's failure to object to the prosecutor's closing argument, the post-conviction court found that this was a tactical decision and that Petitioner had not established prejudice because none of the statements constituted reversible error.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in

order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and

application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

## *A. Opening Statement*

Petitioner argues that trial counsel was ineffective when he referenced her statement to police in support of a self-defense theory during his opening statement and then changed defense theories when the statement was not introduced into evidence. The State responds that trial counsel's decision to preview the anticipated evidence and defense theory and his decision to change theories based on the evidence actually produced at trial were both reasonable tactical decisions.

Unfulfilled promises made during opening statement and sudden unjustified changes in defense strategy may constitute deficient performance of counsel. *See Johnson v. State*, 145 S.W.3d 97, 119 (Tenn. Crim. App. 2004) (finding deficient performance based on counsel's failure to present promised expert testimony regarding defendant's mental state); *Kenneth Anthony v. State*, No. M2003-02272-CCA-R3-PC, 2004 WL 1947811, at *4 (Tenn. Crim. App. Aug. 11, 2004) (finding deficient performance based on counsel's failure to present any evidence in support of stated self-defense theory), *no perm app. filed*; *State v. Zimmerman*, 823 S.W.2d 220, 224 (Tenn. Crim. App. 1991) (finding deficient performance based on counsel's failure to present promised testimony of defendant and psychologist in support of battered wife defense). This Court has cautioned that "'The trial attorney should only inform the jury of the evidence that he is sure he can prove . . . . His failure to keep [a] promise [to the jury] impairs his personal credibility. The jury may view unsupported claims as an outright attempt at misrepresentation.'" *Zimmerman*, 823 S.W.2d at 225 (quoting McCloskey, *Criminal Law Desk Book*, § 1506(3)(O) (Matthew Bender, 1990)). However, a change in defense strategy in response to unexpected developments in the proof presented at trial does not constitute deficient performance. *See Felts v. State*, 354 S.W.3d 266, 284-85 (Tenn. 2011) (determining strategic decision not to present promised testimony of defendant based, in part, on more-favorable-than-anticipated testimony of victims was not deficient); *Derek T. Payne v. State*, No. W2008-02784-CCA-R3-PC, 2010 WL 161493, at *13 (Tenn. Crim. App. Jan. 15, 2010) (determining strategic decision to "stop on a high note" and not present promised expert testimony after defendant testified "better than expected" was not deficient), *perm. app. denied* (Tenn. May 11, 2010); *King v. State*, 989 S.W.2d 319, 331 (Tenn. 1999) (determining counsel made reasonable strategic decision to abandon voluntary intoxication theory after unexpected testimony regarding defendant's violence while sober). The primary determining factor is whether "the reasons prompting the change in strategy were known to counsel at the time the opening statement was made." *Felts*, 354 S.W.3d at 285; *see also Zimmerman*, 823 S.W.2d at 226 (finding deficient performance when potential issues with chosen strategy

were known ahead of time and "there appear[ed] to have been no basis for the sudden change in strategy").

During his opening statement, trial counsel stated, in pertinent part, as follows:

[Petitioner] gave a statement to the police. I mean an open statement. Didn't try to hide anything. And the police will probably tell you about her statement. She didn't try to hide [any]thing. She told them exactly what happened out there.

She turns around and she looks and these thugs are jumping on her husband. She's a woman. And we're not talking about 6-3, 180 pounds. This kid that we're talking about, if you want to call him a kid, gangster. She goes to help her husband. She even tells the police I pulled out the gun. It was in my hand and she said I really don't know what happened at that point on. It was kind of a frenzy out there.

You will find it was kind of a frenzy out there. Everything was going on. People hollering, people screaming, and people fighting. The only thing that I can say is [Petitioner] didn't start it. She didn't intend to start it. She just goes over to talk. And it was self-defense. What would you do if you're a woman, they beat up your child and you've seen how he looked[?] They're jumping on your husband. What are you going to do? I submit to you if you answer that question[,] you're going to say that [Petitioner] is not guilty. She tried to protect her husband. And when you hear her statement you will see that's what she was trying to do. Nothing more and nothing less. . . . And I think after you hear all the proof, the only verdict you can come back with is not guilty.

As trial counsel explained at the post-conviction hearing, the discovery he had been provided by the State included both a statement from Petitioner in which she admitted that she had a gun in her hand and that it "went off" as well as a statement from Gloria Withers identifying the shooter as "the lady." Trial counsel explained that he "suspected" that the State would use Petitioner's statement during its case-in-chief and that he wanted to "take the sting out" of the evidence by previewing it for the jury during opening statement. Additionally, codefendant Jackson's attorney had just told the jury during his opening statement that Petitioner fired the shots based, in part, on the anticipated testimony of Ms. Withers. However, during the course of the trial, Petitioner's statement was never entered into evidence, and Ms. Withers provided more equivocal testimony as to the identity of the shooter; specifically, she testified that both defendants were close to where she saw gunfire and that "one of them" fired the shots. *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at *2. Trial counsel

testified that a self-defense argument "didn't feel right in my closing" based on the evidence actually presented during the trial. He considered that the jury might look upon the change in strategy "unfavorably," but did not know if the jury would remember what he had said at the beginning of a six-day trial. Trial counsel ultimately argued in closing that the State presented no proof that Petitioner possessed the gun during the shooting.

We agree with the State that trial counsel never promised the jury that he would present Petitioner's statement. In fact, trial counsel agreed that he could not introduce the statement because it would be hearsay. Trial counsel was simply attempting to predict the evidence when he stated that "the police will probably tell you about her statement." *See David Ivy v. State*, No. W2010-01844-CCA-R3-PD, 2012 WL 6681905, at \*33 (Tenn. Crim. App. Dec. 21, 2012) (holding that a failed attempt to predict the introduction of evidence in an opening statement did not constitute deficient performance), *perm. app. denied* (Tenn. Apr. 9, 2013). Petitioner argues that trial counsel should have anticipated that the State would not introduce her statement because the State did not specifically mention it in its own opening statement. However, trial counsel made a sound tactical decision to confront this inculpatory statement head-on in order to "take the sting out" of it. Moreover, trial counsel made a sound strategic decision to abandon the self-defense theory after none of the witnesses at trial testified that they saw the gun in Petitioner's hand at the scene. While the Tennessee Supreme Court has "acknowledge[d] that defense attorneys should strive to present a consistent theory of defense at trial," a change in circumstances may justify a change in defense theory mid-trial. *King*, 989 S.W.2d at 331; *see also Felts*, 354 S.W.3d at 285. "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). Petitioner has not met her burden of overcoming "the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson*, 453 S.W.3d at 393. Additionally, Petitioner cannot establish that she was prejudiced because the jury was instructed that the arguments of counsel are not evidence and to disregard any statements that are not supported by the evidence. The jury is presumed to follow the instructions of the trial court. *See State v. Banks*, 271 S.W.3d 90, 134 (Tenn. 2008). Petitioner is not entitled to relief.

### B. Severance

Petitioner argues that trial counsel was ineffective for failing to adequately argue for a severance from her codefendant. Specifically, Petitioner argues that severance was justified because she could not receive a fair trial if tried jointly with Jackson due to Jackson's statement to police implicating Petitioner. *See* Tenn. R. Crim. P. 14(c)(2)(B) (stating that the court should grant a severance if "necessary to achieve a fair determination of the guilt or innocence of one or more defendants"). Petitioner asserts

that trial counsel should have filed a written motion for severance, argued the motion independently from codefendant Jackson's attorney, and renewed the motion during trial when Jackson's statement was admitted during his cross-examination by the State. However, because trial counsel failed to file a written motion and simply "joined in" Jackson's motion, Petitioner's severance issue was deemed to be waived by this Court on direct appeal. *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at \*7 ("Accordingly, as to Defendant Summers, we conclude that the severance claim is procedurally waived for not being timely pursued at trial.").[5] The State responds that Petitioner has failed to establish that she was prejudiced by trial counsel's failure to adequately pursue severance pre-trial.

Trial counsel was not ineffective for failing to file a written motion for severance because none is required by the Tennessee Rules of Criminal Procedure. *See generally* Tenn. R. Crim. P. 14; *see also* Tenn. R. Crim. P. 12(a) (stating that motions in criminal proceedings "may be oral or written, at the discretion of the judge"). Additionally, trial counsel was not ineffective for failing to raise the severance issue during the trial because such a motion must be made pre-trial unless it is "based on a ground not previously known." Tenn. R. Crim. P. 14(a)(1)(A); *see also* Tenn. R. Crim. P. 12(b)(2)(E) (listing a Rule 14 motion to sever as one that must be made before trial). Petitioner has not contended that trial counsel was unaware of Jackson's statement implicating her prior to its admission during his cross-examination.

As to Petitioner's argument that trial counsel was ineffective for simply joining in codefendant Jackson's motion, Petitioner has not established that trial counsel's performance in this regard was deficient. Both trial counsel and the prosecutor, Mr. Gilbert, recalled trial counsel joining in Jackson's attorney's motion, but neither could recall the specific argument provided by trial counsel. Trial counsel testified that he believed that his argument for severance would have been based on Jackson's statement implicating Petitioner—and, indeed, trial counsel presented that very argument to this Court on appeal. *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at \*6. We note that while Petitioner submitted the trial transcript as an exhibit, it does not contain a transcript of any pre-trial hearing on the severance motion. *See* T.C.A. § 40-30-110(f) (placing the burden of proving factual allegations by clear and convincing evidence on the petitioner). Therefore, based on the record presently before us, we agree with the post-conviction court's conclusion that Petitioner has failed to establish that trial counsel's performance in arguing for severance was deficient.

---

[5] This Court also noted the State's argument that Petitioner's motion for new trial was filed one day late and that the record on appeal did not contain a transcript of the hearing on the motion for severance; however, we did not deem the issue to be waived on either of these grounds. *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at \*6.

Moreover, Petitioner has also failed to establish that she was prejudiced by any alleged failure on trial counsel's part. "The decision to sever criminal defendants is wholly within the discretion of the trial court and cannot be interfered with absent clear abuse." *State v. Mickens*, 123 S.W.3d 355, 383 (Tenn. Crim. App. 2003) (internal quotations and citations omitted). "Mutually antagonistic" defenses and attempts by each codefendant to "cast blame on the other" do not alone justify severance. *State v. Ensley*, 956 S.W.2d 502, 509 (Tenn. Crim. App. 1996). "Where a motion for severance has been denied, the test to be applied in determining whether the trial court abused its discretion is whether the defendant was 'clearly prejudiced' in his defense as a result of being tried with his codefendant." *State v. Price*, 46 S.W.3d 785, 803 (Tenn. Crim. App. 2000). On direct appeal, this Court determined that "[a] review of the evidence against each defendant makes clear that neither was prejudiced by the fact they were tried together." *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at *7. Specifically, this Court held that even if Petitioner's severance issue were not waived, "it would be without merit given the abundant proof which the State could have presented in a separate trial against [Petitioner]." *Id*.

Petitioner argues at length that these statements in the direct appeal opinion are ultimately dicta and, therefore, the issue has not been "previously determined." *See* T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing."); *Kevin Wilkins v. State*, No. W2006-00639-CCA-R3-PC, 2008 WL 1788055, at *10 (Tenn. Crim. App. Apr. 18, 2008) (holding that an issue was not previously determined when addressed on direct appeal only in dictum), *perm. app. dismissed* (Tenn. Jul. 25, 2008). However, we see no reason to deviate from our prior evaluation of the State's proof. Indeed, had Petitioner been tried separately from Jackson, the State could have certainly introduced Petitioner's statement admitting that she possessed the gun during the incident and that it "went off" in addition to the already "abundant proof" of guilt.

Moreover, we agree with the observation that the severance issue is without merit. Tennessee Rule of Criminal Procedure 14(c)(1) provides a specific procedure when severance is sought on the basis of "an out-of-court statement of a codefendant [which] makes reference to the defendant but is not admissible against the defendant." According to the Advisory Commission Comments, this provision specifically addresses "the *Bruton* issue . . . making severance unnecessary where no *Bruton* violation would follow, as would be true, for example, where the confessing codefendant testifies or where redaction eliminates any prejudice to the nonconfessing codefendant." Tenn. R. Crim. P. 14, Advisory Comm'n Cmt. (citing *Bruton*, 391 U.S. 123). Because codefendant Jackson testified and was subject to cross-examination by Petitioner's counsel, the admission of his statement implicating Petitioner did not violate *Bruton*, and severance was not required under Rule 14(c)(1). Petitioner has failed to show either deficiency or prejudice and, therefore, is not entitled to relief.

## C. Objection to State's Closing Argument

Petitioner argues that trial counsel was ineffective for failing to object to certain allegedly improper statements during the State's closing argument and for failing to request a mistrial based on those statements. Specifically, Petitioner points to the following statements from the prosecutor's closing argument and rebuttal:

[With regard to a Polo hat found on the scene and whether it belonged to Little Tony or Mr. Withers:] Did you notice Little Tony[?] He had on a Polo shirt. I would bet you a dollar to donuts that shirt was bought last week. Right. *I submit to you that that is a smoke screen. I do not believe that story one bit. I submit that you should not either.* . . . Sergeant Mullins said ["]I just didn't have any information that [the hat] had anything to do with anything or I would have submitted it [for DNA testing."] *Sergeant Mullins is a good officer.* I think you saw him. He would have done that if Little Tony said that was my hat.

. . . .

[With regard to codefendant Jackson's attorney's argument that Mr. White did not see the gun in Jackson's hand:] His own client contradicts his defense [by testifying that he was fighting with Mr. Withers]. Right. You heard from the witnesses. You heard from Ms. Withers. You heard from Kardell [Itson]. You heard from Mary Itson who were all out there. And *I think that the proof is very, very consistent* . . . between those eyewitnesses that whatever happened sort of went from here . . . That everybody was very close together. And that his defense that Mr. Jackson was fighting with Nico [White] and couldn't have fired the shots is not consistent.

. . . .

[With regard to the argument that the victims were the first aggressors:] This isn't just a case of, whoa, my client is wrongfully accused. *I don't think there's any doubt they're guilty.* They created this circumstance. And they can put all of this character evidence about [the victims' gang affiliation] . . . *They have been trying to deceive you* and make you think that all gangsters should die.

The State responds that trial counsel made a strategic decision not to object to these statements. Moreover, the State asserts that Petitioner cannot show that an objection to

any of these statements would have affected the outcome of the trial. We agree with the State.

In *State v. Goltz*, this Court recognized general areas of prosecutorial misconduct in the context of closing argument, including expressing a "personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citations omitted). Additionally, a prosecutor should not make comments that "reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial." *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). However, this Court has previously recognized that "[t]he decisions of a trial attorney as to whether to object to opposing counsel's arguments are often primarily tactical decisions." *Derek T. Payne*, 2010 WL 161493, at *15. Indeed, "attorneys may often choose not to object to damaging evidence for strategic reasons, such as 'to avoid emphasizing [the unfavorable evidence] to the jury.'" *Id.* (quoting *Gregory Paul Lance v. State*, No. M2005-01765-CCA-R3-PC, 2006 WL 2380619, at *6 (Tenn. Crim. App. Aug. 16, 2006), *perm. app. denied* (Tenn. Dec. 18, 2006)); *see also Lemar Brooks v. State*, No. M2010-02451-CCA-R3-PC, 2012 WL 112554, at *14 (Tenn. Crim. App. Jan. 11, 2012), *perm. app. denied* (Tenn. May 16, 2012). Moreover, to establish prejudice, the petitioner must show that the statements in closing argument were "so inflammatory or improper that it affected the outcome of the trial to the defendant's prejudice." *Banks*, 271 S.W.3d at 131.

Trial counsel testified that he did not object to each of the challenged statements because he believed that an objection on "every little point" would risk "turn[ing] the jurors off" and causing them to wonder if the defense was hiding something. Trial counsel did not believe the phrase "smoke screen" was objectionable because it was commonly used and because the prosecutor had prefaced the statement with "I submit." *See Coker*, 911 S.W.2d at 368 (noting that "if argument is predicated by the words 'I think' or 'I submit,' it is unlikely to be adjudged as a personal opinion"). Trial counsel further explained that if a particular statement did not hurt his case, he would not object because of the risk of focusing the jurors' attention on it. Trial counsel made a valid strategic decision not to object to these statements and, therefore, did not render constitutionally deficient performance. Moreover, we agree with the post-conviction court's determination that none of the statements were so inflammatory as to constitute reversible error; thus, Petitioner did not suffer any prejudice from trial counsel's failure to object. *See Banks*, 271 S.W.3d at 131 (listing factors to consider when reviewing the propriety of a prosecutor's closing argument). Petitioner is not entitled to relief.

### D. Motion for New Trial

Petitioner argues that trial counsel was ineffective for failing to file a timely motion for new trial and that she is entitled to a delayed appeal. Petitioner relies on

*Wallace v. State*, 121 S.W.3d 652, 657 (Tenn. 2003), for the proposition that the failure to file a timely motion for new trial was not only deficient, but also presumptively prejudicial. The State responds that because this Court considered the merits of Petitioner's claims on direct appeal beyond the sufficiency of the evidence, she is entitled to neither a presumption of prejudice nor a delayed appeal. We agree with the State.

A motion for new trial must be filed "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory and jurisdictional, and an untimely motion for new trial is a legal nullity. *State v. Johnson*, 980 S.W.2d 414, 418 (Tenn. Crim. App. 1998) (citing *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997)). Failure to file a timely motion for new trial risks waiver of issues on appeal other than sufficiency of the evidence and sentencing. *See* Tenn. R. App. P. 3(e); *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997) (citing *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980)). A trial judge's erroneous consideration of an untimely motion for new trial does not validate the motion. *Martin*, 940 S.W.2d at 569 (citing *State v. Dodson,* 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)).

The Post-Conviction Procedure Act allows for the granting of a delayed appeal or a delayed motion for new trial if "the petitioner was denied the right to an appeal from the original conviction." T.C.A. § 40-30-113. In *Wallace*, the Tennessee Supreme Court held that counsel's failure to file a timely motion for new trial, thereby waiving all issues on appeal except sufficiency of the evidence, "resulted in . . . the complete failure to subject the State to the adversarial appellate process" and was, therefore, "presumptively prejudicial." *Wallace*, 121 S.W.3d at 658 (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)). "[W]hen 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' the process becomes 'presumptively unreliable' and proof of actual prejudice is not required." *Id*. at 657 (quoting *Cronic*, 466 U.S. at 659). However, the *Wallace* court

> decline[d] to adopt a *per se* rule regarding a trial counsel's failure to file a motion for new trial; instead, a petitioner in a post-conviction proceeding must establish that he or she intended to file a motion for new trial and that but for the deficient representation of counsel, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence.

*Id.* at 659 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). In other words, "the key issue is [whether] the failure of trial counsel to file the specified pleading result[ed] in the defendant being deprived of complete appellate review on direct appeal." *Id*.

In this case, the post-conviction court found that trial counsel filed the motion for new trial one day late. Despite the late filing, the motion was heard by the trial court. On direct appeal, this Court noted the State's argument that Petitioner's severance issue

should be waived due to the untimely motion for new trial. *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at \*6. However, this Court did not rule on that basis but considered the merits of both Petitioner's severance and evidentiary issues. *Id*. at \*6-8. While the post-conviction court erred in concluding that the *trial* court's review of the untimely motion for new trial established that Petitioner was not prejudiced, *see Martin*, 940 S.W.2d at 569, we conclude that Petitioner was not prejudiced because the *appellate* court reviewed Petitioner's issues beyond sufficiency of the evidence. Despite the untimely motion for new trial, Petitioner was not "barred from pursuing issues on appeal," and the State's case was "subjected to adversarial scrutiny upon appeal." *See Wallace*, 121 S.W.3d at 660. Petitioner's allegation that trial counsel was ineffective for failing to include certain issues on direct appeal—discussed further below—is not a basis for presuming prejudice and granting a delayed appeal. *See State v. Kenneth S. Griffin*, No. E2000-02471-CCA-R3CD, 2001 WL 710178, at \*2 (Tenn. Crim. App. June 25, 2001), *perm. app. denied* (Tenn. Oct. 1, 2001).

### E. Jury Instruction on Dangerous Felony

Petitioner argues that trial counsel was ineffective for failing to argue on appeal that the trial court committed plain error by failing to specify which felony was to serve as the underlying dangerous felony for the employment of a firearm charge.[6] Specifically, Petitioner asserts that the jury instruction permitted the jury to consider non-dangerous felonies and to potentially reach a non-unanimous verdict. The State responds that Petitioner was not prejudiced by the instruction in light of the proof adduced and the jury's verdict during the initial guilt phase of the trial.

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995) (citing *Evitts v. Lucey*, 469 U.S. 387 (1985)). Like claims of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are subject to the *Strickland* standard set forth above. *Id*. In other words, a petitioner must establish both that appellate counsel was deficient for failing to raise or preserve an issue on appeal and that there was a reasonable probability that had the issue been properly raised, it "would have affected the result of the appeal." *Id*. at 597. However, an attorney is "not constitutionally required to raise every conceivable issue on appeal," and the determination of which issues to raise on appeal are strategic decisions "within appellate counsel's sound discretion" and "should

---

[6] We note that trial counsel raised this issue in his untimely motion for new trial and testified at the post-conviction hearing that he thought he also raised the issue on appeal. However, the very confusing argument in the appellate brief focuses instead on the contention that because the lesser-included offense of reckless endangerment includes the use of a deadly weapon as an essential element, the associated greater felonies should have been statutorily disqualified from being the predicate dangerous felony. *See* T.C.A. § 39-17-1324(c). This Court did not address this argument in our opinion. *See generally Antonio Jackson and Joletta Summers*, 2014 WL 6200805.

be given considerable deference." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citations omitted). Ultimately, the petitioner must establish that the issue had some merit; otherwise, counsel's failure to raise it would not have been deficient and the petitioner would have suffered no prejudice. *Id.*

The appellate issue in this case deals with the propriety of jury instructions. It is well-recognized that a defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *see State v. Leath*, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous," only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id.* Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *Carpenter*, 126 S.W.3d at 892; *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

The trial in this case was bifurcated. The jury initially considered only the first two counts of the indictment—second degree murder and attempted second degree murder. The trial court instructed the jury on the lesser-included offenses of voluntary manslaughter, reckless homicide, criminally negligent homicide, reckless endangerment, and assault as well as facilitation and attempt. The jury was also instructed that its verdict must be unanimous and that they had to acquit the defendants of the greater charge before considering the lesser-included offenses. After the jury deliberated and returned guilty verdicts on the lesser-included offenses of voluntary manslaughter and attempted voluntary manslaughter, the trial court instructed them on the charge of employment of a firearm during the commission of a dangerous felony. Specifically, the trial court stated as follows:

> To the members of the jury, you have now determined that the defendants, Jo[]letta Summers and Antonio Jackson, one or both, are guilty of committing a dangerous felony pursuant to Counts 1 and/or 2 . . . Any person who employs a firearm during the commission of or attempt to commit a dangerous offense is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> That the defendant employed a firearm;
>
> and that the employment was during the commission of or attempt to commit a dangerous felony which means an

- 18 -

attempt to commit second degree murder as defined in these jury instructions;

or an attempt to commit voluntary manslaughter as defined in these jury instructions;

or such other lesser included felony;

and that the defendant acted either intentionally, knowingly, or recklessly.

The jury was again instructed that its verdict must be unanimous.

According to Petitioner, the trial court erred by failing to specify whether the firearm charge attached to Count 1 or Count 2, potentially resulting in a non-unanimous verdict. Additionally, Petitioner contends that the jury could have considered lesser-included offenses, such as reckless homicide, that do not qualify as dangerous felonies under the firearm statute. *See* T.C.A. § 39-17-1324(i)(1). Petitioner submits that because trial counsel failed to file a timely motion for new trial, "his only hope would have been to raise this issue as plain error on appeal." *See* Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for new trial or assigned as error on appeal."). We note that regardless of whether this Court would have deemed the issue waived because of the untimely motion for new trial, the issue would have also been waived because of trial counsel's failure to object at trial. *See State v. Robinson*, 146 S.W.3d 469, 489 (Tenn. 2004). Therefore, we will determine whether the issue had any merit under plain error review.

There are five factors that must be established before this Court will recognize plain error:

(a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the accused did not waive the right for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (adopting the test established by *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The burden is on the defendant to establish all five factors, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be

established." *Id*. at 283. Furthermore, the error must be of "such a great magnitude that it probably changed the outcome of the trial." *Id.*

In this case, there was no breach of a clear and unequivocal rule of law in this case when the trial court failed to distinguish between the first two counts of the indictment as the potential predicate felony. Petitioner relies upon a number of appellate cases that were decided at the time her direct appeal was pending in which this Court held that it was error for the trial court not to specify which predicate felony the jury should consider. *See, e.g.*, *State v. Willie Duncan*, No. W2013-02554-CCA-R3-CD, 2014 WL 4243746, at *10 (Tenn. Crim. App. Aug. 27, 2014), *rev'd on other grounds*, 505 S.W.3d 480 (Tenn. 2016); *State v. Curtis Keller*, No. W2012-00825-CCA-R3-CD, 2013 WL 3329032, at *5 (Tenn. Crim. App. June 27, 2013), *perm. app. denied* (Tenn. Dec. 10, 2013); *State v. Martin Boyce*, No. W2012-00887-CCA-R3-CD, 2013 WL 4027244, at *13 (Tenn. Crim. App. Aug. 6, 2013), *no perm. app. filed*; *State v. Trutonio Yancy*, No. W2011-01543-CCA-R3-CD, 2012 WL 4057369, at *8 (Tenn. Crim. App. Sept. 17, 2012), *perm. app. denied* (Tenn. Jan. 14, 2013); *State v. Michael L. Powell*, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279, at *15 (Tenn. Crim. App. May 10, 2012), *no perm. app. filed*. However, as Petitioner concedes, these cases are distinguishable because the respective juries may have convicted the defendant of a non-existent crime. In each case, either the jury was not provided a definition of "dangerous felony" at all—leading to the possibility that they considered a felony that is not defined as dangerous under the firearm statute—or the instructions narrowed the potential predicate felonies but erroneously included a felony that was disqualified because it contained the use of a firearm as an essential element. *See* § T.C.A. 39-17-1324(c). In this case, because Petitioner was convicted of only statutorily enumerated dangerous felonies that were not disqualified, there is very little likelihood that the jury convicted Petitioner of a non-existent crime, even with the trial court's inclusion of the phrase "or such other lesser included felony." *See State v. Ricky Duvil Lunsford*, No. W2014-01926-CCA-R3-CD, 2016 WL 1756447, at *11-12 (Tenn. Crim. App. Apr. 29, 2016) (holding that the trial court's instruction that the jury could consider "attempted first degree murder or any lesser included felony" as the underlying dangerous felony was harmless error because the defendant was actually convicted of an enumerated dangerous felony), *perm. app. denied* (Tenn. Sept. 27, 2016).[7]

From the jury instructions given in this case, it is clear that the jury was not given free rein to consider any number of potential underlying felonies as suggested by Petitioner. The trial court began its instruction on the employment of a firearm charge with "you have now determined that the defendants . . . are guilty of committing a

---

[7] We recognize that this case was not decided at the time Petitioner's direct appeal was pending; however, we agree with the rationale of *Ricky Duvil Lunsford*. Moreover, Petitioner merely asserts that *Ricky Duvil Lunsford* was wrongly decided without elaboration and fails to provide any argument as to why her case would have been decided differently.

dangerous felony." The jury had already convicted Petitioner of voluntary manslaughter and attempted voluntary manslaughter before they were instructed on the employment of a firearm charge. In doing so, the jury had to first acquit her of attempted second degree murder in both counts. Even though the trial court instructed the jury that they could consider attempted second degree murder as the underlying felony, it is unlikely that they did so because they had already determined that the State did not prove attempted second degree murder beyond a reasonable doubt. Additionally, even though the completed offense of voluntary manslaughter is defined as a dangerous felony, *see* T.C.A. § 39-17-1324(i)(1)(C), the trial court specified "attempt to commit voluntary manslaughter" in its instructions. *See* T.C.A. § 39-17-1324(i)(1)(M). Without knowing that the completed offense of voluntary manslaughter in Count 1 was a statutorily enumerated dangerous felony, it is reasonable to conclude that the jury considered only the attempted voluntary manslaughter in Count 2 as the underlying dangerous felony. The jury was instructed that its verdict had to be unanimous, and the jury is presumed to follow the instructions of the trial court. *See Banks*, 271 S.W.3d at 134. Even if the inclusion of the phrase "or such other lesser included felony" was error, it was harmless, *see Ricky Duvil Lunsford*, 2016 WL 1756447, at *11-12, and consideration of a harmless error would not be necessary to do substantial justice. Petitioner has not established that this issue would have merited plain error relief; thus, she has not established either that trial counsel was deficient or that she was prejudiced by trial counsel's failure to raise the issue on appeal.

*Conclusion*

Based upon our review, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE

- 21 -